IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CR-188-TCK |
| | ) | |
| RAYMOND MARK HAMILTON, | ) | |
| | ) | |
| Defendant. | ) | |

<u>OPINION AND ORDER</u>

Before the Court is Defendant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 28 U.S.C. § 2255 ("2255 Motion") (Doc. 28).

**I.    Factual Background**

In 2005, Defendant Raymond Mark Hamilton pled guilty to possession of a firearm and

ammunition after a felony conviction, which would typically carry a ten-year maximum sentence.

Based on facts set forth in the Presentence Investigation Report ("PSR"), the Court found Defendant

had seven prior convictions for violent felonies under 18 U.S.C. § 924(e) and classified Defendant

as an Armed Career Criminal ("ACC") under the Armed Career Criminal Act ("ACCA").  These

seven convictions consisted of (1) simple burglary under Louisiana law; (2) second degree burglary

under Oklahoma law; (3) second degree burglary under Oklahoma law; (4) robbery with firearms

under Oklahoma law; (5) assault with a deadly weapon and felony DUI under California law; (6)

felony DUI under California law; and (7) second degree burglary under Oklahoma law.  As a result

of application of the ACCA, the Court sentenced Defendant to 190 months imprisonment to run

concurrently with an undischarged fifteen-year state sentence.  Defendant did not appeal his

conviction or sentence.

## II.     ACCA's Definition of Violent Felony and Supreme Court's Ruling in *Johnson*

The ACCA defines violent felony as "any crime punishable by imprisonment for a term exceeding one year" that meets one of three requirements: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"); (2) is burglary, arson, or extortion, or involves use of explosives" (the "enumerated offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).  In *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 2557 (2015), the Supreme Court declared the residual clause unconstitutionally vague.  In *Welch v. United States*, ___ U.S. ___, 136 S. Ct. 1257, 1268 (2016), the Court held that *Johnson* announced a substantive rule that has retroactive effect in cases on collateral review.

## III.    2255 Motion

In his 2255 motion, Defendant argues he no longer qualifies as an ACC in light of *Johnson*'s invalidation of the residual clause.  (*See* Doc. 45.)  The Court ordered the United States to respond. The United States argues that, notwithstanding the Supreme Court's decision in *Johnson*, Defendant is not entitled to any sentence modification because he has five convictions that qualify as ACCA violent felonies under other valid clauses in § 924(e)(2)(B).  In essence, the United States makes a "harmless error" argument, meaning any *Johnson* error that occurred was harmless because the sentence would have remained the same.  *See Johnson v. United States*, No. 3:16-CV-00215 (MPS), 2016 WL 7362764, at *5 (D. Conn. Dec. 19, 2016) (describing similar argument by United States as a "harmless error" argument).

The Court assumes without deciding that Defendant's convictions for the California crime of assault with a deadly weapon and the Oklahoma crime of robbery with firearms qualify as violent

2

felonies under the elements clause, as argued by the United States. One additional violent felony is needed for ACC status, and the United States concedes that the DUI convictions do not qualify. This leaves the three Oklahoma second degree burglary convictions and the Louisiana burglary conviction as remaining possible predicate convictions. The dispute presented by the 2255 motion is whether any of these four burglary convictions qualify as a violent felony under the elements clause of the ACCA, such that any *Johnson* error was harmless.

## IV.     § 2255 Standard

A federal prisoner may only obtain relief under § 2255 if his sentence (1) was imposed in violation of the Constitution or federal laws, (2) was imposed by a court without jurisdiction to do so, (3) was in excess of the maximum permitted by the law, or (4) is otherwise subject to attack. 28 U.S.C. § 2255. In order to obtain relief under § 2255 on the basis of constitutional error, the petitioner must establish "an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *United States v. Dago*, 441 F.3d 1238, 1245-46 (10th Cir. 2006). In cases involving a jury verdict, the standard is satisfied if the judge "thinks that the error substantially influenced the jury's decision." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "[W]here the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error," the petitioner must win. *Id.*

This standard extends to sentencing errors, and Defendant must therefore establish that the *Johnson* error had a "substantial and injurious effect" on his sentence. *See Johnson v. United States*, No. 3:16-CV-215(MPS), 2016 WL 7362764, at *5 (D. Conn. Dec. 19, 2016) (although defendant had shown that his 1994 rioting conviction could no longer serve as an ACCA predicate, defendant

was also required to show error "resulted in actual prejudice").  If the Court is in "grave doubt" as to whether the residual clause error was indeed harmless, Defendant has satisfied his burden of showing a substantial and injurious effect on his sentence.  *See id.* (court expressed "grave doubt" as to whether sentencing judge would have found two prior convictions were committed on different occasions and therefore found 1991 conviction could not be considered an ACCA predicate).

**V.      Threshold Issues Raised by Unpublished Tenth Circuit Decision**

In December of 2016, in an unpublished decision, the Tenth Circuit denied a certificate of appealability to a petitioner seeking relief based on a residual-clause error.  *See United States v. Taylor*, No. 16-6223, 2016 WL 7093905 (10th Cir. Dec. 6. 2016).  But for *Taylor*, the Court would have (1) proceeded directly to the question of whether the burglary convictions alternatively qualify as predicate convictions under the enumerated offense clause, and (2) applied current law to this issue, including *Mathis v. United States,* ___ U.S. ___, 136 S. Ct. 2243 (2016).  Certain reasoning in *Taylor,* discussed below, causes the Court to address two threshold questions although they were not briefed by the parties.

**A.      Must Petitioner Prove Sentencing Court Relied Upon Residual Clause Where Sentencing Record Is Silent?**

In at least one § 2255 proceeding within the Tenth Circuit, the United States unsuccessfully argued that a § 2255 petitioner is only entitled to *Johnson* relief if he can show that a sentencing court "actually relied on the residual clause in sentencing [him], (as opposed to the enumerated offense clause)." *See United States v. James*, No. 06-20172-JWL, 2016 WL 3936495, at *1 (D. Kan. July 21, 2016) (rejecting United States' argument that court should not reach merits of § 2255 petition and stating that "the [sentencing] court's failure to specify which clause applied to Mr.

4

James' conviction does not preclude resentencing under *Johnson*").  However, in *Taylor,* the Tenth

Circuit arguably implied acceptance of some form of this argument:

> The government contended Mr. Taylor was not entitled to resentencing because *Johnson* applies only to the residual clause of the ACCA, and *Mr. Taylor was not sentenced* under the residual clause. *The district court agreed*, explaining that the ACCA's definition of "violent felony" includes felony convictions for four specific offenses, including burglary. And *Johnson* did not affect sentencing enhancements based on the ACCA's enumerated offenses. Thus, the district court concluded Mr. Taylor's prior convictions were for "violent felonies" and the ACCA sentencing enhancement applied.
>
> We agree with the district court's analysis under *Johnson*. The Supreme Court in *Johnson* held only that the ACCA's residual clause was unconstitutionally vague and specifically explained that its "decision d[id] not call into question application of the [ACCA] to the four enumerated offenses," which include burglary. *Johnson*, 135 S. Ct. at 2563. Thus, *Johnson* does not afford Mr. Taylor the relief he seeks.

*Id.* (emphasis added).  The import of the Tenth Circuit's finding that the defendant was "not

sentenced" under the residual clause is unclear.  If the Tenth Circuit is simply affirming that the

*Johnson* error had no substantial and injurious effect on his sentence because the burglary qualified

as a violent felony under a clause other than the residual clause, this is unremarkable.  If the Tenth

Circuit is implying that a defendant bears some type of burden to show a district court's actual

reliance on the residual clause at the time of sentencing, this would seem to present a threshold

issue.  Out of an abundance of caution, the Court addresses this issue below.

The Court holds that: (1) where the record is silent and a court could have relied on multiple

clauses at the time of sentencing, a defendant need not show a sentencing court "actually relied" on

the residual clause; and (2) assuming a defendant does bear some threshold burden, Defendant has

done so here.

Defendant was sentenced on June 20, 2007.  The Court found at sentencing that all seven

convictions listed in the PSR were violent felonies for purposes of the ACCA enhancement.  This

5

was based solely on review of the PSR, which was silent as to which clause (residual or otherwise) prompted classification of any of the seven convictions as violent felonies.  At the time of sentencing, the Court itself did not specify which clause caused it to classify the Oklahoma burglaries or the Louisiana burglary (or any of the other crimes) as violent felonies.  Nor was it the Court's practice to specify which clause it relied upon absent a challenge or objection raised during sentencing.  Nor does the Court purport to recall which clause it actually relied on almost ten years ago.

Where the record is silent and a court did not address any sentencing objections, it is unfair to require a petitioner to show "actual reliance" on the residual clause.  Absent any record by the Court or analysis in the PSR, there is no means by which a defendant could prove this fact.  To hold that *Johnson* relief is unavailable on a silent or unclear record punishes defendants and their lawyers for failing to predict the residual clause would be found unconstitutional and therefore failing to challenge application of the enumerated offense clause at the time of sentencing.  Case law is in accord.  *See In re Adams*, 825 F.3d 1283, 1285 (11th Cir. 2016) (granting leave to file second or successive petition where it was "unclear from the record which clause of the ACCA the district court employed when it concluded that [the defendant's] prior burglary conviction qualified as a predicate offense"); *James,* 2016 WL 3936495, at *1 (rejecting procedural argument that petitioner had to prove he was actually sentenced under the residual clause to receive sentence modification); *see also United States v. Little*, ___ F.3d ____, 2016 WL 3902581, at *6-7 (10th Cir. July 19, 2016) (remanding case for resentencing under *Johnson,* as applied to the Sentencing Guidelines, where the district court relied upon both the elements clause and the residual clause).

6

Assuming Defendant bears some burden to show reliance on the residual clause, Defendant has done so.  The Court most likely relied on the residual clause, rather than the enumerated offense clause, to classify the burglary convictions as violent felonies.  Absent a record or particular memory, the Court concludes it took the path of least resistance.  If the burglary certainly qualified under the residual clause, there was no need to analyze whether it also qualified under the enumerated offense clause.  The enumerated offense clause required a more complex comparison of Oklahoma's statute to the generic burglary definition based on a modified categorical approach, yet there was no such analysis or discussion of the enumerated offense clause in the record or the PSR.  This silence indicates the probation office and the Court likely relied on the residual clause and moved down the road.  At a minimum, the Court has a "grave doubt" as to whether the *Johnson* error was indeed harmless.  Therefore, assuming the Tenth Circuit's decision in *Taylor* turns on that defendant being "not sentenced" under the residual clause, it is factually distinguishable because this Court most likely relied on the residual clause in classifying the burglaries as violent felonies.[1]

### B.    May the Court Consider *Mathis* In Ruling Upon 2255 Motion?

*Johnson* opened the courthouse doors for Defendant because the now-invalid residual clause most likely caused him to be classified as an ACC.  In other words, *Johnson* permits Defendant to seek collateral relief under § 2255 and renders the petition timely.  Another threshold question arises

---

[1]  It is unclear what the Tenth Circuit relied upon to conclude the defendant in *Taylor* was "not sentenced" under the residual clause.  *Id.* at *2.  The district court opinion simply held that, notwithstanding invalidation of the residual clause, the defendant's convictions also or alternatively qualified under the enumerated offense clause and that he was therefore not entitled to any sentence modification.  *See United States v. Taylor*, No. CIV-16-58-D, 2016 WL 2903293, at *3 (W.D. Okla. May 18, 2016).  The district court certainly did not foreclose relief as a threshold matter; the court went on to analyze the convictions under the enumerated offense clause using a modified approach. *See id.*

of whether, in deciding the merits of the motion, the Court may consider *Mathis v. United States,* __ U.S. ___, 136 S. Ct. 2243 (2016), which impacts whether Defendant's burglary convictions alternatively qualify as violent felonies under the enumerated offense clause.  In its brief, the United States discusses *Mathis* and does not object to its consideration.  However, in light of certain reasoning in *Taylor*, the Court will also address this issue.

*Mathis* does not announce a new rule of law or have retroactive application to cases on collateral review.  *See Taylor*, 2016 WL 7093905, at *4 (collecting cases).  Therefore, *Mathis* would not entitle a defendant originally sentenced under the enumerated offense clause to seek collateral relief on grounds that a sentencing court applied the now-invalid modified categorical approach. However, as explained above, Defendant was not sentenced under the enumerated offense clause as a matter of clear fact or law.  Once *Johnson* permits Defendant to collaterally challenge his sentence based on a residual-clause error, the Court must apply current law on the enumerated offense clause to determine if that error was injurious or harmless.  *See James*, 2016 WL 3936495, at *1 (United States conceded that, in light of *Mathis*, underlying burglary convictions were not violent felonies and that defendant was entitled to relief if court reached merits); *United States v. Baker*, 2016 WL 4593481, at *3 (D. Kan. Sept. 2, 2016) (same); *see also United States v. Hawkins*, No. 8:13CR343, 2016 WL 3645154, at *6-7 (D. Neb. June 30, 2016) (applying *Mathis* in considering merits of § 2255 motion based on *Johnson*); *United States v. Barnett,* No. 06-CR-71-JMH-1, 2016 WL 3983318, at *2 (E.D. Ky. July 25, 2016) (same).  Any other result would require the Court to apply an erroneous application of the modified categorical approach that has been corrected by the Supreme Court.  Accordingly, the Court will consider *Mathis* in deciding the merits of Defendant's 2255 motion.

## VI.    *Mathis v. United States*

Although *Mathis* does not announce a new rule of law, it will result in a significant change in this district's approach to analyzing burglary convictions under the enumerated offense clause. The Court summarizes *Mathis* before reaching the merits of Defendant's arguments.

### A.    *Mathis*' Explanation of Prior Law

In listing burglary, arson, and extortion as enumerated violent felonies under the ACCA, Congress referred only to their "usual" or "generic" versions, rather than to all variations of such crimes that may occur under state law. *Mathis*, 136 S. Ct. at 2248.  Therefore, to determine whether a past conviction for burglary, arson, or extortion qualifies as an ACCA violent felony, "courts compare the elements of the crime of conviction [*i.e.*, under a particular state statute] with the elements of the 'generic' version of the listed offense – *i.e.*, the offense as commonly understood." *Id.* at 2247.  Based on this comparison, a prior crime qualifies as an ACCA predicate "if, but only if, its elements are the same as, or narrower than, those of the generic offense."  *Id.*  This approach, known as the categorical approach, focuses "solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [crime], while ignoring the particular facts of the case."  *Id.*  Thus, for example, if the state burglary statute of conviction "covers any more conduct than the generic offense, then it is not an ACCA 'burglary' – even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries."  *Id.*

Some state statutes complicate the "comparison of elements" analysis because they are divisible, meaning the statute can be divided into more than one crime – one that matches the generic definition and one that does not.  *Id.* at 2249.  To deal with these divisible statutes, the Supreme Court approved the "modified categorical approach," whereby a sentencing court can look

9

"to the indictment, jury instructions, or plea agreement/colloquy to determine what crime, with what elements, a defendant was convicted of."  *Id.*

      **B.**    ***Mathis*' Holding**

The concept of "divisibility" (*i.e.*, the trigger for a categorical or modified categorical approach) proved difficult in application, as exemplified by the Eighth Circuit's treatment of Iowa's burglary statute.  Iowa's burglary statute contains a definition of burglary that includes the term "occupied structure."  Iowa Code § 713.1.  In a separate statute, "occupied structure" is defined to include any "building, structure, appurtenances to buildings and structures, land, water or air vehicles, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." *Id.* § 702.12.  The Eighth Circuit had held the statute was divisible based on the list of "occupied structures," applied the modified categorical approach, reviewed the underlying charging documents, found that the defendant was convicted of burglarizing a building (which matched the generic definition), and sentenced the defendant under the ACCA.  *Mathis*, 126 S. Ct. at 2251.  According to the Supreme Court, this decision added to a circuit split over

> whether ACCA's general rule – that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense – gives way when a statute happens to list various means by which a defendant can satisfy an element.

*Id.*

The Supreme Court held that the modified categorical approach could not be applied (*i.e.*, that the record cannot be considered) where a statute, "instead of merely laying out a crime's elements, lists alternative means of fulfilling one (or more) of them."  *Id.* at 2253.  The Court explained the proper role of the modified approach:

> [T]he modified approach serves – and serves solely – as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque.  It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.

*Id. Mathis* therefore limits use of the modified categorical approach to statutes having disjunctive elements rather than disjunctive means.  *See United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016) ("The Supreme Court recently clarified that a statute is considered divisible only if it creates multiple offenses by setting forth alternative *elements*.").

The Supreme Court then explained why the listed locations in Iowa's statute were means and not elements.  Iowa's statutory scheme created one  "locational element" – namely, "occupied structure," – that could be satisfied in numerous ways.  *Mathis*, 136 S. Ct. at 2250.  The listed locations "are not alternative elements, going toward the creation of separate crimes" but instead merely "lay out alternative ways of satisfying a single locational element." *Id.*  In so holding, the Court relied on Iowa Supreme Court law, which had explicitly held that each location serves as an alternative method of committing the same crime, such that an Iowa "jury need not agree on which of the locations was actually involved." *Id.* (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).  The purpose of the "means versus elements" exercise is to demonstrate the Iowa statute was not actually divisible into multiple crimes and that it was therefore unnecessary (and impermissible) to consider the record to determine which crime the defendant committed. He committed Iowa burglary, which is broader than generic burglary, which ends the inquiry.

## C.    *Mathis*' Road Map for Lower Courts

In Part II.C of the majority opinion, the Supreme Court sets forth a road map for lower courts deciding whether convictions for burglary, arson, or extortion qualify as ACCA predicates, where the state law contains a list of statutory alternatives.

### 1.    Step 1: Elements or Means?

"The first task for a sentencing court faced with an alternatively phrased statute is to determine whether its listed items are elements or means." *Id.* at 2256.  The Court implies this threshold inquiry will be "easy" in most cases after a court considers: (1) the state court's decisional law; (2) statutory language; and (3) whether the statutory alternatives carry different punishments or are merely illustrative examples. *Id.*  If state law "fails to provide clear answers," a sentencing court has "another place to look: the record of a prior conviction itself." *Id.*  This should cause a reader to pause.  At this juncture in the analysis, a court is attempting to classify the alternatively phrased list as means or elements for the very purpose of determining whether it can view the underlying record.  Apparently, however, a sentencing court can "peek" at the record documents for the "sole and limited purpose" of determining whether the listed items are elements.  The Supreme Court describes what can be ascertained from this pre-classification sneak peek at the record:

> Suppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a "building, structure, or vehicle," thus reiterating all the terms of [a state's] law. That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. So too if those documents use a single umbrella term like "premises." Once again, the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2257.  The peek is not to determine what facts occurred; it is to determine what conviction occurred.

### 2.     Step 2: Apply Categorical or Modified Categorical Approach

If the listed items are elements:

> the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime.

*Id.* at 2256.  In other words, courts may conduct a modified categorical approach before comparing the elements of the statute (which is divisible into multiple crimes) to the generic definition of the crime.

Conversely, if the listed items are means:

> the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution. Given ACCA's indifference to how a defendant actually committed a prior offense, the court may ask only whether the elements of the state crime and generic offense make the requisite match.

*Id.*  In other words, courts must conduct a categorical approach because they already know the elements of the statute (which is indivisible) without consulting the record.

### D.     *Mathis'* Dissent

The dissenting Justices predicted lower courts would have difficulty distinguishing between means and elements.  Because it helps illustrate the dilemma posed by application of *Mathis* to the Oklahoma burglary statute, the Court sets forth Justice Breyer's dissent at length:

> The majority's approach, I fear, is not practical. Perhaps the statutes of a few States say whether words like "boat" or "building" stand for an element of a crime or a means to commit a crime. I do not know. I do know, however, that many States have burglary statutes that look very much like the Iowa statute before us today.  I also know that there are very few States where one can find authoritative judicial opinions that decide the means/element question. In fact, the Government told us at

13

oral argument that it had found only "two States" that, in the context of burglary, had answered the means/elements question.

The lack of information is not surprising. After all, a prosecutor often will charge just one (e.g., a "building") of several statutory alternatives. A jury that convicts, then, would normally have to agree unanimously about the existence of that particular fact. Hence, it will not matter for that particular case whether the State, as a general matter, would categorize that fact (to which the statute refers) as an "element" or as a "means."

*So on the majority's approach, what is a federal sentencing judge to do when facing a state statute that refers to a "building," a "boat," a "car," etc.? The charging documents will not answer the question, for—like the documents at issue here—they will simply charge entry into, say, a "building," without more.* But see ante, at 2256 – 2257 (suggesting that a defendant's charging documents will often answer the question). The parties will have to look to other state cases to decide whether that fact is a "means" or an "element." That research will take time and is likely not to come up with an answer. What was once a simple matter will produce a time-consuming legal tangle.

*Id.* at 2263-64 (Breyer, J., dissenting) (internal citations omitted and emphasis added).  Similarly, Justice Alito questioned whether this task is actually "easy."  *Id.* at 2269-70 (Alito, J., dissenting) (describing the "mess that today's decision will produce" and advocating for allowing "a sentencing court to take a look at the record in the earlier case to see if the place that was burglarized was a building or something else").

## VII.    Application of *Mathis* to Oklahoma Second Degree Burglary Statute

In dicta in an unpublished decision, the Tenth Circuit indicated that an Oklahoma second degree burglary conviction does not qualify as a violent felony after *Mathis*.  *See Taylor,* 2016 WL 7093905, at *3.  However, the Tenth Circuit did not discuss Oklahoma law or the arguments now being raised by the United States in favor of "element" treatment of the listed locations.  The Court reaches the same conclusion as *Taylor* but offers the following additional analysis.

14

### A.      Oklahoma Second Degree Burglary Statute and Its Prior Treatment

The Oklahoma statute provides:

> Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin-operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

Okla. Stat. tit. 21, § 1435.  It is well-settled this statute covers more conduct than the Supreme Court's definition of generic burglary.  *See United States v. Green*, 55 F.3d 1513, 1516 (10th Cir. 1995).   Prior to *Mathis*, however, the Tenth Circuit routinely applied the modified categorical approach to this statute and permitted ACCA enhancement where the underlying charging documents demonstrated the conviction satisfied the generic definition.  *See, e.g., id.* ("[T]he conviction may be used for enhancement purposes if the charging document coupled with another document sufficiently enables the sentencing court to determine whether the defendant's prior convictions constitutes a violent felony") (quotation omitted); *United States v. Parnell*, 165 F. App'x 634, 636 (10th Cir. 2006) ("[W]hen a defendant enters a plea of guilty to a nongeneric burglary statute, the facts of the underlying offense must be reviewed to determine whether the offense constitutes a violent felony.").   This remained true even after the Supreme Court explained the "divisibility" approach to non-generic statutes in *Descamps v. United States*, 133 S. Ct. 2276 (2013).  *See United States v. Bias*, 569 F. App'x 632, 634 (10th Cir. 2014) (describing § 1435 as having a "divisible definition" and considering charging document to determine if conviction matched generic definition of burglary).

Because Oklahoma charging documents generally specify the location burglarized, probation officers and courts easily determined if the defendant was convicted of generic burglary by viewing

15

the record.   According to *Mathis*, this is not (and was never) the goal of applying a modified categorical approach.   Unless the crime qualifies in every single instance, it qualifies not at all. Therefore, although *Mathis* merely "clarifies" the concept of divisibility, *Mathis* significantly alters how courts and probation officers will approach Oklahoma second degree burglary convictions for ACCA purposes.[2]

### B.      Step 1: Means or Elements?

After *Mathis*, all courts addressing alternative lists of locations in state burglary statutes have concluded the locations are means rather than elements.   *United States v. White*, 836 F.3d 437 (4th Cir. 2016) (West Virginia); *United States v. Edwards*, 836 F.3d 831 (7th Cir. 2016) (Wisconsin); *United States v. Spencer*, No. 14-CR-322, 2016 WL 4402799 (D. Minn. Aug. 16, 2016) (Illinois); *Hawkins*, 2016 WL 3645154 (Nebraska); *Barnett,* 2016 WL 3983318 (Kentucky).   Some have done so after extensive analysis of state law, *see Edwards*, 836 F.3d at 836-38; *Spencer*, 2016 WL 4402799, at *2-4, while others have simply compared the statute to Iowa's and proceeded to the categorical approach, *see White*, 836 F.3d at 445, *Barnett*, 2016 WL 3983318, at *2; *Hawkins*, 2016 WL 3645154, at *7.   The Tenth Circuit in *Taylor* did not discuss means or elements but simply applied the categorical approach to § 1435.   *Taylor*, 2016 WL 7093905, at *3.

*Mathis* may ultimately come to stand for the proposition, or at least create a presumption, that all lists of alternative locations in burglary statutes are means.   However, *Mathis* instructs courts to find the "means or elements" answer in state law, as it did in an Iowa Supreme Court case.

---

[2]   The Untied States argues that *Mathis* does not upset Tenth Circuit precedent permitting a modified approach, citing *United States v. Marshall*, Case No. 00-CR-155-CVE; 2016 WL 3647880, at *3 (N.D. Okla. July 1, 2016).   Although technically "post-*Mathis*" by one week, the decision does not undertake a *Mathis* analysis.   Thus, this case is unhelpful to the United States.

Seizing on this, the United States argues that Oklahoma law demonstrates that location is an element:

> Unlike the Iowa statute . . . the Oklahoma burglary statute explicitly enumerates the alternative locations in Section 1435.  And in stark contrast to the Iowa case law . . ., Oklahoma courts consistently identify the alternative location as an element of the crime, not a means. . . . [B]oth the statute itself and the Oklahoma court's interpretation . . . support the conclusion that the alternative locations . . . are elements not means.

(06-CR-188, Doc. 51, at 8.)  In attempt to follow the *Mathis* road map, the Court will address these arguments.

### 1.    Case Law

The United States relies upon an Oklahoma Court of Criminal Appeals decision describing the crime at issue on appeal as "second degree of burglary of an 'automobile'" and separately listing "automobile" as an element.  *See Williams v. State*, 762 P.2d 983, 986 (Okla. Crim. App. 1988); *see also Branch v. Howard*, No. CIV-10-54-W, 2011 WL 3584587, at *2 (W.D. Okla. July 6, 2011) (listing "elements" as breaking and entering a "building" of another in which property is kept with the intent to steal); *Castro v. Okla.*, No. CIV-07-0315-HE, 2008 WL 4279759, at *6 (W.D. Okla. Sept. 15, 2008) ("In Oklahoma, a charge of second degree burglary of an automobile requires evidence of a breaking and entering an *automobile* of another in which property is kept with the intent to steal.") (emphasis added).  The United States is correct that these cases imply the location or item burglarized was an element of the crime, *i.e.*, something the jury agreed upon in order to convict.  However, these Oklahoma courts were not directly addressing the means/elements distinction but were instead simply listing the elements as charged in that case.  As explained by Justice Breyer, where a prosecutor charges just one of several statutory alternatives and a jury convicts on that alternative, "it will not matter for that particular case whether the State, as a general

matter, would categorize the fact as an 'element' or as a 'means.'" *Mathis*, 136 S. Ct. at 2264. This

case law, while distinguishable from Iowa law, is of limited persuasive value.

### 2.      Lack of Umbrella Term

The Oklahoma statute differs from the Iowa scheme because it does not have an "umbrella"

locational term, such as occupied structure, which is then defined elsewhere by a list of locations.

Instead, the locations are listed in the same statute, leading the United States to describe the

locations as "enumerated."

The Oklahoma Uniform Jury Instructions also do not list an umbrella term, such as "structure

or erection," but instead appear to instruct trial courts to elect one location:

> No person may be convicted of burglary in the second degree unless the State has
> proved beyond a reasonable doubt each element of the crime. These elements are:
> First, breaking;
> Second, entering;
> **Third, a/an building/room/booth/tent/(railroad car)/automobile/truck/trailer/
> vessel/structure/erection;**
> Fourth, of another;
> Fifth, in which property is kept;
> Sixth, with the intent to **steal/(commit any felony)**.

Okla. Unif. Jury Inst. 5-13 (bold in original). This structure (and bold typeface) indicates Oklahoma

courts typically elect a listed term for the third element based on the crime charged, rather than give

the entire disjunctive list as a jury instruction or use one umbrella term such as structure.  In turn,

juries generally agree on the location as they would an element.

To provide a contrast where an instruction makes clear that a list of statutory alternatives are

"means," one can look at the first degree burglary statute and corresponding instruction.  The first

degree burglary statute provides:

18

> Every person who breaks into and enters the dwelling house of another, in which there is at the time some human being, with intent to commit some crime therein, either:
> 1. By forcibly bursting or breaking the wall, or an outer door, window, or shutter of a window of such house or the lock or bolts of such door, or the fastening of such window or shutter; or
> 2. By breaking in any other manner, being armed with a dangerous weapon or being assisted or aided by one or more confederates then actually present; or
> 3. By unlocking an outer door by means of false keys or by picking the lock thereof, or by lifting a latch or opening a window, is guilty of burglary in the first degree.

Okla. Stat. tit. 21, § 1431.  The uniform instruction merely lists "breaking" as the first element.

Okla. Unif. Jury Instr. Crim. 5-12.  The Committee Comments explain that, although the statute lists three alternative "modes" of breaking, the various modes need not be included in the instruction. *Id.* This contrast supports the United States' argument that the location is an element of the crime because, arguably, the committee knows the difference between elements and means.  If the location is merely one "mode" or "means," the instruction could list "a structure or erection" as the element and explain that a jury need not agree on what structure was burglarized.

The lack of a clear "umbrella" term and the uniform jury instruction are the best support for the "elements" argument.  Again, however, they are not conclusive.  A jury is typically instructed on a single location because location is rarely disputed, and locations typically fit one of the listed items.  If there was a case where the location burglarized did not fit within the list, it seems clear a defendant could still be convicted of burglarizing some other type of unlisted structure or erection. This indicates the list is merely one of "illustrative examples."  *See Mathis*, 136 S. Ct. at 2256 (internal quotations omitted).  Further, in a case where a location arguably fit two of the listed locations, such as a booth shaped like a tent, the state could charge the defendant with burglarizing a "booth or tent."  A jury would not have to agree on whether the structure was a booth or tent, and these elements could be listed disjunctively in the appropriate case.  *See Spencer*, 2016 WL

19

4402799, at *4 (holding that "locality options" in Illinois burglary statute were means rather than elements) (explaining in hypothetical that a jury need not agree if a tent erected on a floating dock was actually a "building" or "watercraft" in order to convict).

### 3.   Peek

Oklahoma law is certainly less clear than Iowa's, and the Court finds it proper to "peek" at Defendant's charging document. *See Mathis*, 136 S. Ct. at 2256-57.  This is supposed to help the court decide if the alternative locations are, in every case, elements or means. *Id.*  As explained above, each time this Court has viewed a document charging a violation of § 1435, it charges a specific location.  In this case, a peek reveals that Defendant was charged with breaking and entering a building, breaking and entering a building, and breaking and entering a residence. *(See* Resp. to 2255 Motion, Exs. 1-3.) *Mathis* indicates this could support a finding that the location is necessarily an element in Oklahoma. *See Mathis*, 136 S. Ct. at 2257.   However, as explained by the Seventh Circuit, state charging documents often allege "additional facts" that are not truly elements of the crime. *See Edwards*, 836 F.3d at 838 ("But because the charging documents may allege additional facts, the inclusion of a dwelling tells us nothing about whether it's an element of burglary or simply a factual description of the type of enclosed structure the defendant entered.").  Due to the reality that facts/elements/means overlap in charging documents, the Court finds the specificity in the charging documents of little assistance in answering the elements/means legal question.

### 4.   Conclusion

Oklahoma case law and a "peek" at Defendant's charging documents indicate that Oklahoma courts generally *treat* the location more like an element than a means of committing the crime. Prosecutors generally charge and prove, and courts instruct, as to just one location.  In turn,

Oklahoma appellate case law typically discusses the location as an element. However, because these sources are not explicitly discussing the means/elements distinction in the *Mathis* context, they are not of persuasive value to the Court. Any inferences that can be raised from these sources are insufficient to overcome the legal reasoning in *Mathis* and the similarity between the Oklahoma and Iowa statutory schemes. Like the Iowa statute, the Oklahoma statute lists the locations in the disjunctive and creates an illustrative list of examples. This indicates the Oklahoma legislature intended to create one crime for breaking and entering various locations, not numerous different crimes depending on the location burglarized. *Cf. United States v. Scott*, No. 09-CR-0126-CVE, 2016 WL 6808149, at *5 (N.D. Okla. Nov. 17, 2016) (applying *Mathis* to Oklahoma statute criminalizing assault, battery, or assault and battery with a sharp or dangerous weapon, *and* also criminalizing in the alternative shooting at another with a gun or similar means) (holding that statute was divisible between two crimes with different elements and applying modified categorical approach).

As a practical matter, unless a state's highest criminal court has explicitly ruled on the means/element question raised in *Mathis* and reached a different conclusion than Iowa's court, a disjunctive list of locations in a burglary statute will likely always be considered means. *Mathis* tells courts to look to state law, but this is largely an exercise in futility. How a state charges, instructs, or discusses listed locations in a burglary statute is of little significance because state courts – and therefore state law – are simply not concerned with the means/elements distinction. They deal with real-world crimes as charged. For purposes of determining whether a conviction is an ACCA predicate, federal courts now deal exclusively with crimes in the abstract. Here, like Iowa's statute,

the Oklahoma statute creates just one crime for breaking and entering a list of possible structures, and the listed locations are simply means of committing the crime.

### C.    Step 2: Categorical or Modified Categorical Approach?

When an alternative statutory list is of means, courts apply the categorical approach.  It is well-settled that Oklahoma's definition of burglary is broader than the generic definition of burglary because it includes automobiles and other places falling outside the generic definition.  *See Green*, 55 F.3d at 1516.  Therefore, none of Defendant's three convictions for Oklahoma second degree burglary qualify as ACCA predicates under the now-invalid residual clause or the enumerated offense clause.

### VIII.  Louisiana Burglary

Simple burglary in Louisiana is defined as the "unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony . . . ."  La. Stat. Ann. tit. 14, § 62.  For the same general reasons explained above in relation to the Oklahoma statute, the listed locations are means under the reasoning in *Mathis*.  Thus, the categorical approach applies.  Categorically, the Louisiana statute is broader than the generic definition of burglary because it includes vehicles, watercraft, and cemeteries.  *See United States v. Cutley*, 476 F. App'x 429, 430 (5th Cir. 2012).  The Louisiana burglary also cannot count as the third predicate conviction.

### IX.  Conclusion

Defendant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 45) is GRANTED.  Defendant has shown that the Court committed *Johnson* error in applying the residual clause to his burglary convictions.  The Court further concludes that the error

22

was "substantial and injurious" because the burglary convictions do not alternatively qualify as predicate convictions under the enumerated offense clause.

Defendant has served approximately 113 months.  Without application of the ACCA enhancement, Defendant's new guidelines range will likely be 30 to 37 months.  Thus, it appears Defendant is entitled to immediate release.  The United States Probation Office is ordered to prepare a revised PSR based on the Court's rulings herein on an expedited basis and submit the PSR to the Court and the United States.  After review of the PSR, the United States shall file a Notice stating whether it objects to re-sentencing at the high end of the guideline range on any basis other than those already raised.   The Notice shall be filed no less than three days after receipt of the PSR.

**SO ORDERED** this 25th day of January, 2017.


**TERENCE KERN**
**United States District Judge**